## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Local Union No. 13417**
**of the United Steel Workers,**

**Plaintiff,**

v.                                                      **Case No. 12-1003-JWL**

**Kansas Gas Service Company,**
**a Division of ONEOK, INC.,**

**Defendant.**

### <u>MEMORANDUM AND ORDER</u>

Pursuant to the Federal Arbitration Act, 9 U.S.C.§ 1 et seq., plaintiff brought suit to

compel arbitration of a dispute over retiree health benefits set forth in the parties' collective

bargaining agreement.  This matter is presently before the court on plaintiff's motion to compel

arbitration pursuant to the FAA (doc. 4).  As will be explained, the motion is granted and the

parties are directed to proceed to arbitration.  The court will stay the judicial proceedings in this

case pending the completion of the arbitration process

**Background**

Kansas Gas Service Company, a division of ONEOK, INC. ("the Company") is the

largest natural gas distribution company in the state of Kansas.  The Company has several

divisions across the state of Kansas including a division in Wichita.  For purposes of collective

bargaining, Local Union No. 13417 of the United Steelworkers (the "Union") represents a

bargaining unit of employees made up of all construction, operation, maintenance, customer

service and plant clerical employees who are employed by the Company at its Wichita division. The Union and the Company are signatories to a series of collective bargaining agreements. Pertinent to the Union's motion, the parties executed a collective bargaining agreement operative from August 26, 2009 through October 27, 2011 ("the 2009 Agreement"). Upon the expiration of the 2009 Agreement, the parties executed a new collective bargaining agreement operative from October 28, 2011 through October 28, 2016 (the "current Agreement"). Both the 2009 Agreement and the current Agreement contain the following arbitration clause:

> The contracting parties agree as a part of the consideration of this contract any and all grievances, disputes, stoppages, suspensions of work, and any and all claims, demands, or actions arising there from or involved therein shall be settled and determined by the contracting parties by negotiation or by grievance and arbitration procedure hereinafter provided.

In addition, Article XI Section 12 of the 2009 Agreement contains provisions relating to the health care of retirees as follows:

> The existing Retirement Program provided by the Company and Group Insurance Program and Savings Plan provided by both Company and employee contributions, will remain in effect during the term of this Contract and will not be modified, changed or terminated in any manner adverse to the interest of employees, unless mutually agreed to by the Company and the Union. . . .
>
> * * * *
>
> Health Care for retirees will be the same as the active plan that is in effect at the date of the individuals [sic] retirement, and will remain in effect for the retirees [sic] lifetime with the following exceptions . . . . $100,000 lifetime max [for post 65 retirees]."

Prior to the dispute in this case, the costs of prescription drugs were not applied toward the lifetime maximum of post-65 retirees.

Effective January 1, 2011, Blue Cross and Blue Shield of Kansas, the third party plan administrator, began applying the costs of prescription drugs to the accumulated lifetime maximum for post-65 retirees.  It did so without authority from the Company.  The Union received notice of the change in April 2011, at which time the Union filed a Grievance Report form, alleging that the application of prescription drug costs to the lifetime maximum of post-65 retirees violated Article XI Section 12 of the 2009 Agreement.  The Union demanded as a remedy that the terms and conditions of the retiree health care plan be reinstated, that "all affected retirees be made whole," and that the Company acknowledge that prescription drug costs are not applicable to the lifetime maximum of post-65 retirees.

Four days after the filing of the Grievance Report, Blue Cross and Blue Shield sent a letter to the Company acknowledging that it had made an error when it allowed–without direction from the Company–the costs of prescription drugs to accumulate toward the lifetime maximum for post-65 retirees.  According to the letter, a recent enhancement in the system capabilities of Blue Cross now permitted Blue Cross, for the first time, to calculate a retiree's prescription drug costs on an individualized basis and, in turn, to utilize these costs towards the lifetime maximum.  In implementing the newly enhanced system for other benefit plans, Blue Cross erroneously implemented the change in the Company's contracts as well.  Blue Cross informed the Company that it would retroactively (back to January 1, 2011) remove the costs of prescription drugs from the lifetime maximums of post-65 retirees.

In May 2011, the Company notified the Union via e-mail that it had the right to include prescription drug costs in the lifetime maximum for post-65 retirees. The Company advised the

Union that it had not done so previously because, until recently, prescription drug costs could not be included in Blue Cross's system for the accumulation of the lifetime maximum. In the e-mail, the Company advised the Union that because Blue Cross's enhanced system now had the ability to accumulate prescription drug costs, the Company would direct Blue Cross to begin adding prescription drug costs to the lifetime maximum effective January 1, 2012. After exhausting the preliminary steps of the Agreement's grievance procedure, the Union demanded arbitration of its grievance on June 15, 2011.

In early October 2011, the Company advised the Union that it intended to offer by mid-2012 an alternative health care plan for current post-65 retirees that would eliminate the lifetime maximum. In the interim, the Company decided to track the prescription drug costs of each retiree and if any retiree during the interim period went over the lifetime maximum as a result of the application of prescription drug costs to the lifetime maximum, the Company would allow that retiree to continue to receive benefits despite the cap until the retiree had the opportunity to decide whether to elect into the new plan. If the retiree opted to stay in the current plan, then the prescription drug costs would be applied to the lifetime maximum as of January 1, 2012.

On October 27, 2011, the 2009 Agreement expired and the current Agreement became effective on October 28, 2011. In November 2011, the Union proposed the selection of an Arbitrator and asked the Company to participate in that process. On November 22, 2011, the Company refused to arbitrate the dispute. The Company now intends to roll out alternative healthcare benefit plan options for post-65 retirees in May or June 2012 and it has advised post-65 retirees of its intention to apply prescription drug costs to the lifetime maximum effective July

4

1, 2012 for any retiree who does not elect an alternative healthcare benefit plan.

**Applicable Standards**

Because other Circuit Courts of Appeals have applied, in the context of a motion to compel arbitration, a standard similar to that applicable to motions for summary judgment, this court has previously concluded that the Tenth Circuit, if faced with the issue, would do the same. *See Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1223-24 (D. Kan. 2007) (citing *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary-judgment-like standard in ruling on a motion to compel arbitration); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (same); *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980) (same); *Gibson v. Wal–Mart Stores, Inc.*, 181 F.3d 1163, 1166 (10th Cir.1999) (reviewing the district court's grant of a motion to compel arbitration under the summary judgment standard where the parties agreed that standard applied); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (holding the district court must hold a jury trial on the existence of the agreement to arbitrate where the parties raise genuine issues of material fact regarding the making of the agreement to arbitrate) (citing *Par–Knit Mills*, 636 F.2d at 54 & n. 9)); *accord Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) ("The district court properly examined CNI's motion to compel arbitration under the summary judgment standard of Federal Rule of Civil Procedure 56(c).").

The parties here agree that this approach is the appropriate one. Under this well-settled standard, summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In resolving the motion to compel arbitration, the court views the facts and draws inferences in the light most favorable to the nonmoving party.  *See Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3rd Cir. 2012); *Gibson*, 181 F.3d at 1166.

The Federal Arbitration Act (FAA) "provides that contractual agreements to arbitrate disputes 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 770–71 (10th Cir.2010) (quoting 9 U.S.C. § 2)).  The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate."  *Id.* at 771 (quoting *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 (4th Cir. 1997)).  The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). [1]

When a contract contains an arbitration clause, there is a presumption in favor of arbitrability–that is, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

---

[1]Section 3 of the Act, 9 U.S.C. § 3, "obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and Section 4, 9 U.S.C. § 4, authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute." *Hill v. Ricoh Americas Corp.*., 603 F.3d 766, 771 (10th Cir. 2010) (citing *Moses H. Cone Mem'l Hosp.v. Mercury Constr. Co.*, 460 U.S. 1, 24–27 (1983) (discussing scope and operation of FAA)).  Here, the court has jurisdiction under section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185.

interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *Local 5-857 Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Conoco Inc*., 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 645 U.S. 643, 650 (1986)).  The Supreme Court has held that the presumption is "particularly applicable" where there is a broad arbitration clause.  *Id*. (citing *AT&T*, 475 U.S. at 650).  "In such cases, in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Id*. (quoting *AT&T*, 475 U.S. at 650).

Despite the presumption in favor of arbitrability, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Id*. (quoting *AT&T*, 475 U.S. at 648); Granite rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2859 (2010) (presumption favoring arbitration does not override the principle that a court may submit to arbitration only those dipsutes thta the parties have agreed to arbitrate).  It follows that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Conoco*, 320 F.3d at 1126 (quoting *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002)).  At the same time, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."  *Id*. (quoting *AT&T*, 475 U.S. at 649).

**Discussion**

7

In its motion to compel, the Union asserts that this dispute is plainly arbitrable because the subject matter of the dispute (retiree health benefits under Article XI Section 12 of the Agreement) falls within the 2009 Agreement's broad arbitration provision.  In its response, the Company sets forth three reasons why it believes this dispute is not arbitrable.  According to the Company, it never agreed to arbitrate disputes raised by retirees, none of whom are Union members.  The Company also contends that the Union's grievance, as a "postexpiration" grievance, is not arbitrable under the Supreme Court's decision in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991).  Finally, the Company asserts that the Union may not represent the retirees in arbitration without the consent of the retirees.  The court addresses each of these arguments in turn.

**Whether the Company Agreed to Arbitrate Disputes over Retiree Medical Benefits**

Relying on the Seventh Circuit's opinion in *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), the Company contends that the 2009 Agreement expressly limits an arbitrable grievance to one between the Company and an employee and that it never agreed to arbitrate the disputes of retirees.  In *Rossetto*, the Circuit concluded that the union lacked standing to represent the retirees in arbitration unless the retirees consented to representation by the union. The fact that the collective bargaining agreement in *Rossetto* provided for retiree health benefits was deemed insufficient by itself to support the conclusion that the company agreed to arbitrate retiree claims.  *See Exelon Generation Co. v. Local 15, Int'l Bhd.of Elec. Workers, AFL-CIO*, 540 F.3d 640, 645 (7th Cir. 2008) (summarizing and distinguishing *Rossetto*).  The arbitration

8

provision at issue in *Rossetto* provided for arbitration of "all grievances . . . between the Company and its employees."  Critical to the Seventh Circuit's opinion, then, was that the agreement expressly defined an arbitrable grievance as one between the company and an employee. *See id.*

Putting aside the "standing" aspect of *Rossetto* (an argument that the Company asserts below), the Company contends that *Rossetto* stands for the principle that when an arbitration provision expressly limits an arbitrable grievance to those disputes between the company and its employees, then the company cannot be forced to arbitrate disputes between itself and retirees.  According to the Company, the arbitration provision in the 2009 Agreement is "comparable" to the provision examined by the Seventh Circuit in *Rossetto*.  The court disagrees. Unlike the express limitation in *Rossetto* (providing for arbitration of "all grievances or misunderstandings between the Company and its employees"), the arbitration here does not expressly restrict arbitration to grievances by employees.  It states as follows:

> The contracting parties agree as a part of the consideration of this contract any and all grievances, disputes, stoppages, suspensions of work, and any and all claims, demands, or actions arising there from or involved therein shall be settled and determined by the contracting parties by negotiation or by grievance and arbitration procedure hereinafter provided.

This provision is much broader than the provision at issue in *Rossetto*.[2]  The Company focuses intently on the "contracting parties" language in the first sentence of the provision and contends

---

[2]Plainly, the arbitration provision is a broad one.  *See Newmont U.S.A. Ltd. v. Insurance Co. of North Am.*, 615 F.3d 1268, 1274-75 (10th Cir. 2010) (generally, when an arbitration provision provides for "any" dispute "arising out of" a particular contract, the provision is construed broadly to suggest that a given dispute is arbitrable.").

that because the "contracting parties" are the Company and the Union "whose members are employed by the Company," then the provision must be read to exclude retiree disputes.  In *Exelon*, the Seventh Circuit, analyzing an analogous arbitration provision, addressed and rejected a similar argument.  *Id*. at 645-46.

There, the company maintained, relying on *Rossetto*, that it was not required to arbitrate retiree disputes.  Rejecting that argument, the Seventh Circuit noted that the "critical distinction" in *Rossetto* was that the arbitration provision expressly defined an arbitrable grievance as one between the company and an employee.  *Id*. at 645.  In contrast, the arbitration provision in *Exelon* broadly covered "any dispute or difference . . . between the Company and the Union or its members as to the interpretation or application of any of the provisions" of the bargaining agreement.  *Id*. at 643 n.1.  The company, then, had agreed to arbitrate disputes with the Union and there was no express provision limiting grievances brought by the Union to grievances filed on behalf of employees.  *See id.* at 646.  Ultimately, then, the Circuit relied on the presumption of arbitrability to affirm the district court's decision that Exelon had agreed to arbitrate disputes over retiree medical benefits.  *Id*. at 647.

Similarly, the fact that the arbitration provision here is limited to the "contracting parties" does not compel the conclusion that a dispute over retiree benefits is not arbitrable.  The Company concedes that it has contracted with the Union to arbitrate grievances and the Union has filed a grievance over retiree medical benefits–a subject that is clearly covered in the contract and thus subject to arbitration.  Nothing in the parties' agreement (including language in the contract purportedly limiting the grievance procedure to disputes brought by employees)

expressly excludes from arbitration a grievance brought by the Union on behalf of retirees.  As in *Exelon*, the parties here could have written the 2009 Agreement "to exclude retiree grievances from the arbitration agreement if they had intended to, but they did not."  *Id.* (rejecting argument that language limiting grievance procedure to disputes brought by employees somehow excludes grievances by Union filed on behalf of retirees).  In the absence of any language that clearly limits the arbitration agreement to those disputes involving only current employees, the court applies the presumption of arbitrability and concludes that the Company agreed to arbitrate disputes over retiree benefits.

### The Company's *Litton*-Based Argument

Relying on the Supreme Court's decision in *Litton Financial*, the Company contends that the Union's "postexpiration" grievance is not arbitrable because the Retirees' rights to health care benefits had not vested at the time the contract expired.  *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991).  In *Litton*, the Court considered those circumstances under which there exists a postexpiration duty to arbitrate in the absence of a binding method for resolution of postexpiration disputes.  According to the Court, a postexpiration dispute remains arbitrable even in the postcontract period when the dispute "arises under the contract."  *Id.* at 205.  As further explained by the Court:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id*. at 205-06.  In its submissions, the Company relies solely on the "accrued or vested" prong of *Litton* (devoting a substantial portion of its briefing attempting to establish why the Retirees' rights to health care benefits have not vested) and summarily dismisses the other two prongs as inapplicable to the circumstances here.  For three independent reasons, the court rejects the Company's *Litton*-based argument without reaching the merits of whether the benefits at issue have vested.

To begin, the Company's argument presupposes that the Union's grievance is a "postexpiration" grievance–presumably because *Litton* applies only to postexpiration grievances or disputes.  *See id.* at 209 (layoffs occurred and resulting grievances filed more than one year after expiration of agreement).  But the Union filed its grievance and demanded arbitration during the life of the 2009 Agreement.  In such circumstances, the court sees no basis for the Company's characterization of the grievance as "post-expiration."  *See In re New York Typographical Union No. 6 v. Printers League Section of the Ass'n of Graphic Arts*, 1992 WL 84476, at *6 (S.D.N.Y. Apr. 14, 1992) (characterizing dispute as "pre-expiration" where Union sought to convene arbitration panel prior to expiration of agreement; although many developments occurred after termination of the contract, the "key date" is the date of the original dispute).

The arbitrability of a preexpiration grievance is controlled by *John Wiley*.  In *John Wiley*, as here, the Union first sought to arbitrate the question of post-contract severance pay while the agreement under which it claimed such benefits was still in effect.  *Nolde Bros., Inc. v. Local No.*

12

*358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977).   The

employer argued that its duty to arbitrate the pre-expiration grievance expired when the contract

expired.   *See id.* at 251.   The Supreme Court rejected that argument, holding that because the

dispute occurred prior to expiration o f the contract, and the parties in the expired agreement had

agreed to submit the issue to arbitration, the duty to arbitrate attached to that dispute.   *Id.* at 251-

52 (citing *John Wiley*, 376 U.S. at 554-55).   As further explained by the Supreme Court in *Nolde*

*Brothers*,

> Carried to its logical conclusion that argument [that termination of a
> collective bargaining agreement extinguishes a party's duty to arbitrate grievances
> arising under the contract] would preclude the entry of a post-contract arbitration
> order even when the dispute arose during the life of the contract but arbitration
> proceedings had not begun before termination. The same would be true if
> arbitration processes began but were not completed, during the contract's term.
> Yet it could not seriously be contended in either instance that the expiration of the
> contract would terminate the parties' contractual obligation to resolve such a
> dispute in an arbitral, rather than a judicial forum.

*Id.* at 251.   In light of *John Wiley*, as further clarified in *Nolde Brothers*, there is no doubt that

a dispute about a particular clause in the contract arising during the life of the contract is subject

to the mandatory arbitration procedures of the contract.   This principle covers the Union's

grievance here.

Despite the fact that the Union filed its grievance and demanded arbitration prior to the

expiration of the 2009 Agreement, the Company suggests that the dispute is not arbitrable (or,

more accurately, that the court should not consider the Union's grievance to be a preexpiration

grievance) because the event giving rise to the contractual dispute–applying prescription drug

costs towards the lifetime maximum for post-65 retirees–will not occur until after the expiration

of the agreement.[3]  This is the scenario contemplated by the Supreme Court in *Nolde Brothers* wherein the Court unequivocally stated that a dispute that is based on events occurring after the expiration of the contract is nonetheless arbitrable if the dispute concerns an obligation arguably created by the expired agreement.  *See Nolde Bros.*, 430 U.S. at 251-52.  In that case, the Court held that the fact that the Union filed its grievance concerning severance pay shortly after the expiration of the contract (as the Company apparently believes the Union should have done in this case) did not control the arbitrability of the dispute.  *Id*. at 252.  According to the Court, the dispute was nonetheless arbitrable because resolution of the dispute turned on the interpretation given to the expired agreement's clause providing for severance pay such that the dispute, although arising after the expiration of the agreement, clearly arose under the expired agreement. *See id.* at 249-52.  The Company's suggestion, then, that the court should not consider the Union's grievance to be a preexpiration grievance because the event giving rise to the dispute did not occur preexpiration is unavailing.

Even if the Union's grievance is properly considered or deemed a postexpiration

---

[3]To the extent the Company is suggesting that the Union's grievance is not ripe, that question is left to the arbitrator.  *See Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002); *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557-58 (1964) (procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc*., 860 F.2d 1420, 1425 (7th Cir. 1988) ("[T]here is authority that the court should inquire only whether the subject matter of a dispute is within the arbitration clause, leaving the arguably procedural issue of 'ripeness' to the arbitrator."); *Ace American Ins. Co. v. Huntsman Corp*., 225 F.R.D. 179, 210 (S.D. Tex. 2008) (once it is determined that arbitration is warranted, questions about the ripeness of the underlying dispute is determined by arbitrator); *International Union, United Auto. Aerospace & Agricultural Implement Workers of Am. (UAW) v. Federal-Mogul Corp*., 2007 WL 1888802, at *4 (E.D. Mich. June 29, 2007).

grievance, the court nonetheless would not apply *Litton* to the facts before it. In *Litton*, the grievance was filed after the existing agreement had expired and negotiations on the new agreement had not yet been completed. 501 U.S. at 198. Concluding that the prior agreement's arbitration clause did not survive the expiration of the agreement, and in the absence of a binding method for resolution of postexpiration disputes, the Court held that such a dispute is subject to arbitration "in the postcontract period" if the dispute arises under the prior contract. *Id.* at 204-05. Significantly, *Litton* involved the window of time between the expiration of a prior contract and the successful negotiation of a successor agreement. In other words, there existed a lapse in the parties' contractual duty to arbitrate such that the parties, at the time the grievance was filed, were not bound by an express arbitration agreement. Here, the parties' contractual duty to arbitrate has never lapsed–the parties negotiated a successor agreement (containing a broad arbitration clause) on the heels of the expired agreement.

The Company has not directed the court to a single case applying *Litton* in the context of a successor agreement containing an arbitration clause and the court's own research has not revealed such a case. That having been said, the court also has not uncovered a case declining to apply *Litton* to these facts. The Third Circuit, however, has at least recognized the idea that *Litton* does not apply where "the duty to arbitrate never came to rest." *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 361 n.24 (3rd Cir. 1994). In *Luden's*, the Third Circuit declined to consider the three *Litton* prongs because it found an implied-in-fact collective bargaining agreement which arose by virtue of the parties' conduct after the lapse of the prior agreement. *Id.* at 354. As explained by Judge

Becker:

> There is no need to consider whether any of [the] three *Litton* prongs applies to the facts of this case because our conclusion that the duty to arbitrate never came to rest clearly compels the result that the dispute must proceed to arbitration. The parties' duty to arbitrate was never discharged because during the interim period . . . it survived in the implied-in-fact CBA and thereafter as part of the near "agreement." The three *Litton* prongs, of course, apply only to disputes surfacing after the parties have been relieved of their contractual duty to arbitrate; while the duty to arbitrate is operative, the strong presumption favoring arbitration governs.

*Id*. at 361 n.24.

Here, of course, the court need not consider whether an implied-in-fact contract exists (and need not predict whether the Tenth Circuit would follow that aspect of the *Luden's* opinion) because the parties entered into a successor agreement such that the contractual duty to arbitrate has never lapsed. The key point that the court derives from *Luden's* is that so long as the parties remain under a duty to arbitrate, there is a presumption in favor of arbitration and *Litton* does not apply. Because the parties here have always maintained a contractual duty to arbitrate their disputes, it is difficult to conceive that they did not intend for this particular dispute to be resolved by arbitration. Thus, there is no reason to consider *Litton* to ascertain whether the parties intended to arbitrate in the postcontract period–the parties themselves have expressed that intent through their ongoing contractual obligation to do so.

Finally, even if the court were to apply *Litton* here, the court would conclude that the dispute is arbitrable. As noted earlier, a postexpiration grievance can be said to "arise under the contract" for purposes of arbitrability if the grievance or dispute "involves facts and occurrences that arose before expiration." *Litton*, 501 U.S. at 205-06. Importantly, the Tenth Circuit does

16

not require that all of the facts and occurrences arise prior to expiration or even that a majority of the facts and occurrences arise prior to expiration. According to the Tenth Circuit, a dispute "arises under" a previous contract if it "relates to events that occurred at least in part while the contract was still in effect." *Newmont U.S.A. Ltd. v. Insurance Co. of North Am.*, 615 F.3d 1268, 1275 (10th Cir. 2010). Here, the Union received notice during the 2009 Agreement that the Company intended to apply prescription drug costs toward the lifetime maximum of post-65 retirees. The Union filed its grievance (seeking to arbitrate a dispute over the retiree health benefits provision contained in the 2009 Agreement) and demanded arbitration while the 2009 Agreement was still in effect. Thus, the dispute "arose under the contract" and satisfies the *Litton* test for postexpiration arbitrability. *See In re New York Typographical Union No. 6 v. Printers League Section of the Ass'n of Graphic Arts*, 1992 WL 84476, at *7 (S.D.N.Y. Apr. 14, 1992) (case "fits" *Litton* rationale where grievance was filed and arbitration demanded prior to expiration of contract).

**Whether the Union May Represent the Retirees in Arbitration**

Finally, the Company contends that even if the court determines that this dispute is subject to the arbitration provision of the 2009 Agreement, the Union must obtain the consent of the retirees in order to represent the retirees in arbitration.[4] To begin, although the Company

---

[4]Although the Union initially filed its grievance on behalf of all members, it appears from various documents in the record that the Union is no longer seeking to represent current employees in arbitration.

17

purports to challenge the Union's "standing" to proceed to arbitration in the absence of the retirees' consent, it does not appear to the court that the Company means to challenge the Union's standing under Article III of the Constitution.  As the Supreme Court has stated: "whether [an] arbitration provision inures to the benefit of [a party] and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute" between them, "presents a straightforward issue of contract interpretation," and not "standing."  *See Kop-Flex Emerson Power Transmission Corp. v. International Ass'n of Machinists & Aerospace Workers Local Lodge No. 1784*, ___ F. Supp. 2d ___, 2012 WL 34018, at *9 (D. Md. Jan. 6, 2012) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).  Moreover, the majority of cases recognize that a union has Article III standing to represent retirees in a dispute concerning retiree benefits where the union and company have bargained for retiree benefits and include those benefits in a contract.  *See United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 282 (6th Cir. 2007) ("[I]t is clear that the Union does have standing to arbitrate on behalf of the Retirees."); *Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*, 440 F.3d 809, 815 (6th Cir. 2006); *United Steel Workers of Am. Local 884, AFL-CIO v. Laclede Gas Co.*, 2010 WL 3721512, at *4-5 (E.D. Mo. Sept. 15, 2010) ("It is 'axiomatic' that a party to an agreement who negotiated a contract on behalf of a third party has standing to sue to enforce that contract." (quoting *Frontier Commc'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers*, 2008 WL 1991096, at *2-4 & n.3 (S.D.N.Y. May 6, 2008)).

The court's inquiry, then, is limited to whether it should apply a so-called "consent rule"–that is, whether the Union must obtain the consent of the retirees it seeks to represent in

arbitration. Both the Seventh and Sixth Circuits have squarely held that a Union seeking to represent retirees in arbitration must obtain the consent of those retirees it seeks to represent. *See Rossetto v. Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997); *Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am., Local 270*, 440 F.3d 809 (6th Cir. 2006). The Eighth and Fifth Circuits have suggested in dicta that they would adopt similar consent rules. *See Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1296 (8th Cir. 1985) (even though a union has standing to assert retirees' rights under a CBA, a union is not the exclusive representative of retirees and retirees do not have to proceed through the union); *International Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp.*, 410 F.3d 204, 212-13 (5th Cir. 2005) (union had standing to represent 52 retirees whose express authorizations of the union to do so were filed with the district court). Only the Ninth Circuit has rejected a consent rule in the context of a union seeking to represent retirees in arbitration. *See International Bhd. of Elec. Workers, AFL-CIO Local 1245 v. Citizens Telecomm. Co.*, 549 F.3d 781 (9th Cir. 2008) (refusing to write into the CBA a consent requirement provision for which the Company failed to bargain).

The consent rule espoused by the Seventh Circuit stems from the recognition that retirees, who by definition are no longer employees within the bargaining unit, are no longer exclusively represented by the union and, thus, any claims for benefits that retirees have belong to the retirees individually and may be pursued directly by the retirees against the employer. *See Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 647 (7th Cir. 2008). That being said, the possibility of union representation of retirees in arbitration

is not entirely foreclosed:

> This is not to say that a union can never take retirees' claims to arbitration. Although a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose. And, of course, retiree benefits are a permissive subject of bargaining–a union may bargain for retirees if the employer agrees. What we are saying is that any right District 10 has to pursue arbitration of the retirees' grievance must come from the retirees.

*Id.* (quoting *Rossetto*, 128 F.3d at 540).      As clarified by the Seventh Circuit in *Exelon*, *Rossetto* does not require "the consent of each and every affected retiree . . . in order to give effect to a single retiree's agreement to arbitrate his or her claim." *Id.* at 648. "To require the consent of all in effect would allow those retirees who choose not to consent to the Union's representation in arbitration to 'hijack' the rights of the retirees who do consent to such representation and arbitration." *Id.* (citing *Rossetto*, 128 F.3d at 540). Thus, the Seventh Circuit allows for each retiree individually to decide whether to consent to arbitration or his or her own claims. *See id.* at 648-49. The arbitrator's decision, then, would be final and binding as to the parties to the arbitration but would not bind non-parties to the arbitration. *Id.* at 649 (recognizing, however, that the arbitrator's interpretation of the CBA might be given weight in a subsequent proceeding, if any, brought by retirees who have not consented to the Union's representation in arbitration).

The court believes that the Tenth Circuit, if faced with the issue, would adopt the consent rule adopted by the Seventh Circuit in *Rossetto* as clarified in *Exelon*. This approach ensures that the Union is representing in arbitration only those retirees who desire to have their interests represented by the Union. It also eliminates the possibility that retirees might get the proverbial "second bite at the apple" in an individual proceeding if the employer prevails against the union

in arbitration.  *See Cleveland Elec.*, 440 F.3d at 817.   For these reasons, the court agrees with the Company that the Union may represent in arbitration only those retirees from which it obtains written consent to do so.  The arbitrator is in the best position to determine procedurally how the Union may obtain these consents in terms of the appropriate universe of retirees from whom the Union may attempt to obtain consent;[5] whether and to what extent it is appropriate for the Company to produce last-known-address information; the nature and extent of written notice to the retirees; and appropriate scheduling of deadlines for consent to be filed.  *See id.* at 818 (it is the arbitrator's responsibility to work through the details arising from the requirement that the Union obtain consent of retirees).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to compel arbitration pursuant to the FAA (doc. 4) is granted and the parties are directed to proceed to arbitration.  The court will stay the judicial proceedings in this case pending the completion of the arbitration process.  Counsel for the parties are directed to report to the court in writing no later than October 26, 2012, concerning the status of that arbitration in the event that it has not been terminated earlier.  Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**

---

[5]There may be some dispute about whether this universe includes all retirees or only those retirees who retired during the life of the 2009 Agreement.

Dated this 25th  day of April, 2012, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge